**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TYLER SHELBERT, | ) | |
| *Plaintiff*, | ) | No. 26 C 6266 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| BAXTER INTERNATIONAL, INC., | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyler Shelbert moves to strike nine of Defendant Baxter International, Inc.'s affirmative and other defenses from its Answer under Federal Rule of Civil Procedure 12(f). (Dkt. 12). For the reasons below, the Court grants in part and denies in part Tyler's Motion. (*Id.*) The Court grants Tyler's Motion as to Affirmative Defense Nos. 1, 10, 11, 12, 13, and grants Baxter 14 days to amend its Answer to replead these Affirmative Defenses. (*Id.*) The Court denies Tyler's Motion as to Affirmative Defense Nos. 5, 7, 8, 14. (*Id.*)

Tyler asserts that nine of Baxter's Affirmative Defenses—Nos. 1, 5, 7, 8, 10, 11, 12, 13, and 14—should be stricken because they: (1) "are not affirmative defenses as a matter of law"; (2) "merely restate" Baxter's "denials of" Tyler's allegations or "invoke equitable or procedural doctrines without alleging any facts supporting their application"; and (3) "are facially inapplicable" to Tyler's "ADA and USERRA claims." (Dkt. 12 at 3). Specifically, Tyler first asserts that Baxter's Affirmative Defense Nos. 1, 7, and 14 are not "true" affirmative defenses because they "merely negate[] an element" of Tyler's "prima facie case or simply den[y] liability[.]" (*Id.* at 3-5). Second, Tyler contends that Baxter's Affirmative Defense Nos. 11, 12, and 13 fail to provide fair notice because they are "conclusory invocations of equitable and procedural

doctrines" that lack "any factual basis supporting their application to this case." (*Id.* at 5-6). Third, Tyler claims that Baxter's Affirmative Defense Nos. 5, 8, and 10 "should be stricken because they bear no apparent relationship to the claims asserted in this action or the factual allegations contained in" Baxter's Answer and are thus "facially inapplicable." (*Id.* at 6-9). Alternatively, Tyler asks the Court to order Baxter "to replead" the 9 contested Affirmative Defenses "with sufficient factual and legal specificity to provide fair notice of the issues genuinely in dispute." (*Id.* at 9-10).

Baxter responds that Tyler's Motion—filed "[w]ithin two hours" of Baxter filing its Answer—should be denied because he failed to carry his burden. (Dkt. 15 at 1, 5-6). Baxter asserts that Tyler failed to "include any argument that striking any defense would alter the pretrial process or prevent prejudice" to him (*id.* at 5); it further notes that he "never explains how striking these defenses would generate any efficiency, narrow discovery, or otherwise alter the pretrial process in a meaningful way." (*Id.* at 6). Rather, Baxter maintains that pleading "defenses early ensures that the case runs smoothly and proceeds without delay." (*Id.*) Baxter counters Tyler's claim that its defenses are conclusory by noting that, when viewed as a whole—instead of in a "vacuum"—Baxter pleaded "sufficient facts to support [its] defenses" and "to put [Tyler] on notice of [Baxter's] position." (*Id.* at 7). "Regardless of whether they are true affirmative defenses," Baxter continues, its "defenses meet the pleading standard under Rule 8, which requires only a short and plain statement of the defense." (*Id.* at 9). In the alternative, Baxter seeks leave to amend under Federal Rule of Civil Procedure 15(a)(2) "[i]f the Court determines that any of [Baxter's] defenses do not satisfy the pleading standards or should not be part of its responsive pleading[.]" (*Id.* at 9-10).

## LEGAL STANDARD

Motions to strike are governed by Federal Rule of Civil Procedure 12(f) which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (cleaned up). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Federal Rule of Civil Procedure 8(a) requires a "'short and plain statement'" of the asserted defense *Id.* (quoting Fed. R. Civ. P. 8(a)). "Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Id.* Thus, the Court will only strike affirmative defenses "when they are insufficient on the face of the pleadings." *Id.*

## ANALYSIS

Tyler's first argument is that Baxter's Affirmative Defense Nos. 1, 7, and 14 are not true Affirmative Defenses. (Dkt. 12 at 3-5). These Affirmative Defenses are as follows:

> **1.** The Complaint fails to state facts sufficient to constitute a cause of action for which relief may be granted.
>
> **7.** Any and all conduct of which Plaintiff complains or which is attributed to Defendant was a just and proper exercise of management discretion, at all times privileged and justified, and undertaken for fair and honest reasons, for good cause, and in good faith and without malice.
>
> **14.** Plaintiff's claims are barred, in whole or in part, because the decisions made in regard to his employment were for legitimate, non-discriminatory, and non-pretextual reasons.

(Dkt. 9 at 22-24). "To survive a motion to strike, an affirmative defense must satisfy a three-part test: '(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge.'" *See Crumpton v. Octapharma Plasma, Inc.*,

513 F. Supp. 3d 1006, 1012 (N.D. Ill. 2021) (quoting *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014)); *see also Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1059 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (applying same standard); *Microthin.com, Inc. v. Siliconezone USA, LLC*, 2006 WL 3302825, at *9 (N.D. Ill. Nov. 14, 2006) (same); *Bobbitt v. Victorian House, Inc.,* 532 F. Supp. 734, 737 (N.D. Ill. 1982) (same). "A defense is affirmative: (1) 'if the defendant bears the burden of proof' under relevant law or (2) 'if it does not controvert the plaintiff's proof.'" *Thirteen Inv. Co., Inc. v. Foremost Ins. Co. Grand Rapids Michigan*, 67 F.4th 389, 391 (7th Cir. 2023) (brackets omitted) (quoting *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012)). "'An affirmative defense limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case.'" *Id.* at 392 (quoting *Bell v. Taylor*, 827 F.3d 699, 704-05 (7th Cir. 2016)). "In other words, an affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Id.* (cleaned up).

Affirmative Defense Nos. 1, 7, and 14 lack clear indicia of being true Affirmative Defenses. (*Compare id. with* Dkt. 9 at 22-24). Baxter concedes as much. (Dkt. 15 at 7) (conceding that, "to the extent they overlap with Defendant's denials, they are properly treated as specific denials rather than stricken"); (*id.* at 8) ("Defendant acknowledges that most of these are not true affirmative defenses, and that it was not legally required to plead them.").[1] That said, Affirmative Defense Nos. 7 and 14 satisfy Rule 8, withstand Rule 12(b)(6) scrutiny, and raise issues of fact and law, making dismissal improper. *Heller*, 883 F.2d at 1294; *Crumpton*, 513 F. Supp. 3d at 1012. This much is necessarily so given that Court's "typically give defendants some slack in pleading" affirmative defenses given "the specific context within which these issues often arise[.]" *See Red*

[1] For ease of reading and clarity, the Court refers to all of the Defenses as Affirmative Defenses even if they are not "true" Affirmative Defenses because the resolution of Tyler's Motion turns on substance not labels.

*Label Music Publ'g, Inc. v. Chila Prods.*, 388 F. Supp. 3d 975, 983 (N.D. Ill. 2019). Affirmative Defense No. 1 is rather opaque, however. (Dkt. 9 at 22). It gives the impression of an argument under Rule 12(b)(6), but it is conclusory. The Court therefore denies Tyler's Motion as to Affirmative Defense Nos. 7 and 14 but grants it as to Affirmative Defense No. 1. The Court grants Baxter 14 days to amend its Answer to amend Affirmative Defense No. 1.

In Tyler's view, any Affirmative Defense that is not a "true" Affirmative Defense is "legally insufficient" and must be dismissed as unnecessary "clutter." (Dkt. 12 at 1-5); (Dkt. 16 at 1-4). Some courts apply this standard inflexibly. *See, e.g.*, *Stoicescu v. Hamilton Sundstrand Corp.*, 2025 WL 919519, at *4 (N.D. Ill. Mar. 26, 2025). This Court does not. No doubt it may be appropriate when, for example, a party asserts a defense late; but if the asserted defense is timely and satisfies Rule 8, it makes little sense to strike it early in litigation with discovery barely off the ground. Consider Affirmative Defense Nos. 7 and 14. Tyler fails to show how to a "certainty" he "would succeed despite any state of . . . facts which could be proved in support of the[se] defense[s]" or that "are inferable from the pleadings." *Williams*, 944 F.2d at 1400. Whether these Affirmative Defenses are "sufficient as a matter of law" the Court need not decide because they clearly "present questions of . . . fact." *Heller*, 883 F.2d at 1294. Affirmative Defense No. 14, for example, states that the "decisions made in regard to [Tyler's] employment were for legitimate, non-discriminatory, and non-pretextual reasons." (Dkt. 9 at 24). The answer to that can only be determined after discovery fleshes out *what* decisions were made, *who* made them, and whether those facts—taken in view of the law—demonstrate legitimate, non-discriminatory, or non-pretextual conduct. *Id.* Moreover, it is a best practice to plead defenses early instead of waiting until later in the case. Judge Marovich aptly captured just this point: "the Court would like to avoid having to rule on multiple motions to amend the answer during the course of discovery as the

defendant obtains additional information that would support those affirmative defenses (such as mitigation of damages) that defendant has no practical way of investigating before discovery. The Court would also like to avoid the discovery disputes that would inevitably develop as a defendant seeks discovery related to affirmative defenses it had not stated in its answer." *See Leon v. Jacobson Transp. Co.*, 2010 WL 4810600, at *1 (N.D. Ill. Nov. 19, 2010). "It is to everyone's benefit to have defendant plead its affirmative defenses early, even if defendant does not have detailed facts." *Id.*; *see also LaPorte v. Bureau Veritas N. Am. Inc.*, 2013 WL 250657, at *3 (N.D. Ill. Jan. 18, 2013) (holding same). The Court therefore declines to strike Affirmative Defense Nos. 7 and 14 merely because they are not "true" Affirmative Defenses.

Tyler's second position is that Affirmative Defense Nos. 11, 12, and 13 fail to give him fair notice because they are conclusory and lack factual support. (Dkt. 12 at 5-6). These three Affirmative Defenses are as follows:

> **11.** Plaintiff's causes of action are barred, in whole or in part, by the doctrine of unclean hands.
>
> **12.** Plaintiff's claims are barred by the doctrines of laches, waiver, and/or estoppel.
>
> **13.** Plaintiff's claims are barred, in whole or in part, to the extent they are outside the applicable statute of limitations.

(Dkt. 9 at 23-24). For starters, almost all of these are required under Federal Rule of Civil Procedure 8(c)(1) and thus must be pleaded to avoid waiver. *Id.* Each of these are "true" Affirmative Defenses because Baxter bears the burden of proof on them. *Thirteen*, 67 F.4th at 391. They fall just short of complying with the text of Rule 8(d)(1) requiring "[e]ach allegation [to] be simple, concise, and direct," however. *Id.* "Courts routinely strike laches, waiver and estoppel defenses when they are insufficiently pled." *See Microthin.com*, 2006 WL 3302825, at *10 (quotes omitted); *see also Builders Bank v. First Bank & Tr. Co. of Illinois*, 2004 WL 626827, at *6 (N.D.

Ill. Mar. 25, 2004) ("Courts have held time and time again that stringing together a long list of legal defenses is not sufficient to satisfy Rule 8(a)'s short and plain statement requirement."). Each of these three Affirmative Defenses "are nothing but bare bones conclusory allegations" lacking a "short and plain statement of facts and . . . the necessary elements of the alleged claims." *Heller*, 883 F.2d at 1295. Baxter notes that Affirmative Defenses "need not be viewed in a vacuum." (Dkt. 15 at 7) (quoting *Green v. Kubota Tractor Corp.*, 2012 WL 1416465, at *3 (N.D.Ill. 2012)). That is true, but unsupported. Baxter identifies nothing in its Answer to back up these Affirmative Defenses. (*Id.*) Baxter further asserts that these Affirmative Defenses "may develop as the factual record is established through discovery." (*Id.*) The Court recognizes that this is a young case with much life left in discovery and that facts relevant to these Affirmative Defenses may solely be in Tyler's possession. The Court grants Tyler's Motion to strike Affirmative Defense Nos. 11, 12, and 13 but grants Baxter 14 days to amend them to put a bit more meat on the bone.

Tyler's third position is that Affirmative Defense Nos. 5, 8, and 10 "should be stricken because they bear no apparent relationship to the claims asserted in this action or the factual allegations contained in [Baxter's] own Answer." (Dkt. 12 at 6-9). These three Affirmative Defenses are as follows:

> **5.** To the extent Plaintiff alleges that any employee of Defendant acted in an unlawful manner, such conduct, if it occurred, was outside the course and scope of that individual's employment, was not authorized or condoned by Defendant, and was undertaken without the knowledge or consent of Defendant. Thus, Defendant is not liable for any such conduct, if it occurred.
>
> **8.** Defendant cannot be held liable for any unlawful or wrongful acts, to the extent they occurred, because any such acts were contrary to Defendant's express policies, procedures, and/or good faith efforts to apply with applicable law.
>
> **10.** Plaintiff, by his actions or otherwise, failed to comply with Defendant's internal policies and/or practices for addressing complaints, including a policy and/or practice barring discrimination and/or retaliation in the workplace and opportunities for addressing such complaints and, accordingly, Plaintiff is estopped,

> otherwise has waived, or is precluded from asserting his claims for damages or other relief.

(Dkt. 9 at 22-23). Affirmative Defenses are not viewed in isolation but up against the allegations and claims in the Complaint. Tyler asserts three claims. Counts I and II are for disability discrimination under the Americans with Disabilities Act (42 U.S.C. §§ 12112, 12102). (Dkt. 1 at 6-7). Tyler's Count III is for discrimination under the Uniformed Services Employment and Reemployment Rights Act (38 U.S.C. § 4311). (*Id.* at 7). Disability is defined under 42 U.S. Code § 12102; whereas discrimination is prohibited under 42 U.S. Code § 12112. "[A] plaintiff pursuing a claim under § 12112(a) must plead and prove that []he held or sought a job when the defendant discriminated against [him] on the basis of disability." *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 60-61 (2025). "[U]nlawful discrimination can take place at any one of three points in time: When a defendant adopts a discriminatory practice, when an individual is affected by application of a discriminatory practice, or when []he becomes subject to such a practice." *Id.* (cleaned up). "To prevail on [his] ADA claim, [Tyler] ha[s] the burden to prove that that (1) []he is disabled; (2) []he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) []he suffered an adverse employment action; and (4) the adverse action was caused by [his] disability." *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 534 (7th Cir. 2025) (quotes omitted). As for Count III, "USERRA prohibits employment discrimination against members of the armed services." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 284 (7th Cir. 2015). The statute provides that "[a] person who is a member of . . . a uniformed service shall not be denied . . . retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). "The statute provides further that such discrimination exists where the employee's service membership was 'a motivating factor' in the employer's adverse action 'unless the employer can prove that the action would have been taken

in the absence of such membership.'" *Arroyo*, 805 F.3d at 284 (quoting 38 U.S.C. § 4311(c)(1)). "This provision creates a two-step burden-shifting scheme: (1) once a plaintiff makes out a *prima facie* case by showing that his membership was 'a motivating factor,' (2) the burden shifts to the employer to prove that it would have taken the same action regardless." *Id.* (quoting *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009)).

Baxter's Affirmative Defense Nos. 5, 8, and 10 lack clear indicia of being true Affirmative Defenses but are better categorized as denials. *Thirteen*, 67 F.4th at 391; *Winforge*, 691 F.3d at 872; *Bell*, 827 F.3d at 704-05. Affirmative Defense Nos. 5 and 8 satisfy Rule 8 and would withstand Rule 12(b)(6) scrutiny. *See Microthin.com*, 2006 WL 3302825, at *9. Tyler asserts that Affirmative Defense No. 5 is "inconsistent" with his Complaint and Baxter's Answer. (Dkt. 12 at 6-7). He further claims that it is directed towards "claims seeking to impose vicarious liability" but that he has asserted "no such claim." (*Id.* at 7). The Court rejects Tyler's position. "An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"; but, subject to certain exceptions, an employer "is not subject to liability for the torts of his servants acting outside the scope of their employment[.]" *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756-58, (1998). Baxter's defense is related to and consistent with Tyler's allegations—even if he only sued Baxter and not any of Baxter's employees. For this reason too whether Tyler asserted a claim seeking to hold Baxter vicariously liable is irrelevant. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023) ("though an employer is generally accountable for the wrongdoing of an employee, he usually can escape liability if he proves that the employee's action was committed outside the scope of employment"). The Court denies Tyler's Motion as to Affirmative Defense No. 5.

Seeking to strike Baxter's Affirmative Defense No. 8, Tyler claims that it is impermissible because it is "considerably broader than the defense recognized by the Supreme Court in *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545-46 (1999)." (Dkt. 12 at 7). *Kolstad* addressed the scope and applicability of punitive damages under Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*) and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*). *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529 (1999). The Court held "that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 545 (quotes omitted). Baxter's Affirmative Defense No. 8 is multi-part: it addresses (i) acts that are "contrary to Defendant's express policies, procedures" and (ii) "good faith efforts to apply with applicable law." (Dkt. 9 at 23). The former, as discussed directly above, is a valid and recognized defense regarding the scope of employment. *Supra* at 9. The latter piggybacks off the holding in *Kolstad*. *Id.* To be sure Baxter's use of "any" in Affirmative Defense No. 8 is broad, but it does not suddenly render the Affirmative Defense legally insufficient. Fed. R. Civ. P. 12(f). Nor would it somehow entitle Baxter to relief not afforded under law. The Court denies Tyler's Motion as to Affirmative Defense No. 8.

The last Affirmative Defense Tyler seeks to strike is No. 10. (Dkt. 12 at 8-9). Tyler claims that "[b]ecause [he] challenges a tangible employment action—not a hostile work environment culminating in no tangible action—the *Faragher/Ellerth* affirmative defense is facially inapplicable and should be stricken." (*Id.* at 9). Baxter counters that Affirmative Defense No. 10 "is a recognized avoidable-consequences/failure-to-mitigate principle that gives [Tyler] notice [of how Baxter] intends to show he bypassed available remedies — a factual issue properly developed in discovery." (Dkt. 15 at 8). If this were a hostile work environment action there is no question

Baxter's Affirmative Defense No. 10 would be stricken because "[n]o affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Tyler did not allege a hostile work environment, however. (Dkt. 1). He also plainly alleged a tangible employment action which Baxter has admitted. (Dkt. 9, ¶ 52). At the same time, Baxter's arguments about Tyler's failure to adhere to Baxter's internal policies and procedures are relevant—and not barred under *Burlington*—in other respects, such as mitigation of damages. *See, e.g.*, *Stragapede v. City of Evanston, Illinois*, 865 F.3d 861, 868 (7th Cir. 2017) (discussing mitigation); *Leon*, 2010 WL 4810600, at *1 (declining to strike affirmative defense concerning mitigation of damages because the "defendant has no practical way of investigating" it "before discovery"). As this Affirmative Defense relates to the mitigation of damages, it is improper to be stricken. *Id.* Yet Baxter does not plead Affirmative Defense No. 10 for mitigation but for a total bar of liability: "Plaintiff is estopped, otherwise has waived, or is precluded from asserting his claims for damages or other relief." (Dkt. 9 at 23). Under similar circumstances, Courts have struck affirmative defenses akin to this one. *See, e.g.*, *Thomas v. Exxon Mobil Corp.*, 2009 WL 377334, at *3 (N.D. Ill. Feb. 11, 2009) ("Because it is undisputed that Thomas was discharged from his position, *Faragher* makes clear that this affirmative defense is inapplicable."). Given the ambiguity and tension with Supreme Court precedent, the Court grants Tyler's Motion on Affirmative Defense No. 10 but grants Baxter 14 days to amend to clarify and delineate its scope to ensure that it does not run afoul *Burlington/Faragher*.

Finally, the Court provides the following notice under Rule 11 and admonishment under its inherent authority. *Vega v. Chicago Bd. of Educ.*, 109 F.4th 948, 954 (7th Cir. 2024); *Johnson v. Cherry*, 422 F.3d 540, 551 (7th Cir. 2005). Baxter filed its 26-page Answer complete with 14

Affirmative Defenses on July 27, 2026, at 6:04 PM CDT. (Dkt. 9). Tyler filed his 10-page Motion to Strike just 1 hour 25 minutes later at 7:29 PM CDT. (Dkt. 12). When Baxter filed its Response to Tyler's Motion to Strike on August 11, 2026, at 2:16 PM CDT (Dkt. 15), Tyler filed his Reply 2 hours, 21 minutes later at 4:37 PM CDT. (Dkt. 16). This raises two red flags. The first is whether Tyler's client was fully apprised of his attorney's actions. To be sure, filing before the deadline is not improper; but to review a 26-page Answer, draft a 10-page Motion to Strike, receive client approval, and file the Motion on the Court's docket in 1 hour and 25 minutes is quite speedy indeed. Assuming Tyler (the client) was fully informed and signed off or gave pre-existing approval, the speed in which Tyler filed this Motion begs the question: how? Perhaps Tyler was anticipating filing this Motion and had aspects of it already drafted. Yet it is not boilerplate but bespoke. (*See* Dkt. 12). The presumable conclusion was that Tyler had AI review Baxter's Answer and had it generate his Motion to Strike. While there is not yet a proscription prohibiting this conduct, there is a proscription of filing a brief with citations to cases that do not stand for the asserted proposition. *Perez-Castillo v. Blanche*, 177 F.4th 837, 848 (7th Cir. 2026). Indeed, "[u]nder this circuit's standards for professional conduct, lawyers promise that they will not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication to the court." *Id.* (quotes omitted).

Tyler cites to *Instituto Nacional de Comercializacion Agricola (Indeca) v. Continental Illinois National Bank & Trust Co.*, 858 F.2d 1264, 1270 (7th Cir. 1988) for the following two propositions: (1) "An affirmative defense is one that accepts the allegations of the complaint as true but nevertheless asserts additional matter that defeats or avoids liability"; and (2) "It is well settled that a pleading which merely negates an element of the plaintiff's prima facie case or simply denies liability is not an affirmative defense and should not be pleaded as one." (Dkt. 12 at 2-3).

The Seventh Circuit opinion in *Instituto* supports neither of these propositions. *See Instituto*, 858 F.2d at 1265-72. Indeed, the words “affirmative defense” are not even in the opinion. *Id.*

The Court admonishes Tyler for repeatedly citing to a Seventh Circuit decision for a false proposition. AI generated content routinely contains errors—including those that may be difficult to readily ascertain.[2] Even if this mistake were committed without the assistance of AI, that would not change the result. *Perez-Castillo*, 177 F.4th at 848. Tyler’s mistake was avoidable. Tyler had at least 21 days to file his Motion to Strike. *See, e.g.*, Fed. R. Civ. P. 12(f)(2). Yet he chose to file in 1 hour and 25 minutes. Had he taken a couple of hours to proofread his work and verify his citations, he might have discovered the mistake. He instead chose to file a Motion with false citations. This admonishment serves as both parties’ warning that the Court will not countenance any submission containing false or hallucinated citations or factual assertions. *Vega*, 109 F.4th at 954; *see also Allen v. Casper*, 2026 WL 674309, at *10 (N.D. Ill. Mar. 10, 2026) (sanctioning plaintiff $1,500 for violating Rule 11 by misusing AI); *Obi v. Cook Cnty., Illinois*, 2026 WL 1001481, at *2 (N.D. Ill. Apr. 9, 2026) (sanctioning plaintiff $5,000 sanction for violating Rule 11 by filing motions with AI hallucinations).

[2] For example, the case presumably intending to be cited was the following district court decision: *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont’l Illinois Nat. Bank & Tr. Co.*, 576 F. Supp. 985, 988 (N.D. Ill. 1983) (discussing affirmative defenses).

## CONCLUSION

The Court grants Tyler's Motion to Strike as to Affirmative Defense Nos. 1, 10, 11, 12, 13, and grants Baxter 14 days to amend its Answer to amend these Affirmative Defenses. (Dkt. 12). The Court denies Tyler's Motion to Strike as to Affirmative Defense Nos. 5, 7, 8, 14. (*Id.*)

Virginia M. Kendall
United States District Judge

Date: August 26, 2026